IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CHRISTY PICKFORD BARTLETT, *et al.*

    *Plaintiffs*,

        v.

CECILE E. PICKFORD

    *Defendant*.

Civil Action No. ELH-13-3919

**MEMORANDUM**

This intra-family dispute pits siblings against each other with respect to valuable real estate located in Talbot County, Maryland.

Christy Pickford Bartlett,[1] as General and Limited Partner of Pickwick Farm Limited Partnership, Trustee of the Patricia Pickford Revocable Trust, and Co-Trustee of the Stephen Pickford and April Pickford Trust; Barbara "Bobbe" P. Mundt;[2] and Judith "Gigi" Pickford Barse, plaintiffs, filed suit against defendant Cecile E. Pickford, as General Partner of Pickwick Farm Limited Partnership.  *See* ECF 2 ("Complaint").[3]  At the center of the controversy is a 76-

---

[1] Ms. Bartlett spells her first name as "Christy" in her pleadings.  But, in various documents submitted in this case, such as the Agreement of Limited Partnership of Pickwick Farm Limited Partnership, ECF 38-3, and a series of e-mails dated May 14, 2013, ECF 38-5, her first name is spelled "Christie."  I will adopt the spelling of Christy, as that is the spelling used by Ms. Bartlett.

[2] Presumably, the "P." standards for Pickford.  However, I have not been able to verify this in the parties' submissions.

[3] Suit was initially filed in the Circuit Court for Talbot County, Maryland and was removed to this Court by defendant based on diversity of citizenship.  *See* 28 U.S.C. § 1332(a); Notice of Removal (ECF 1).

acre farm[4] ("Farm") located in Maryland, owned by the Pickwick Farm Limited Partnership

("Pickwick Farm LP").

From its inception, Pickwick Farm LP has been managed by its two general partners,

Bartlett and Pickford.  ECF 2 at ¶ 11, 15. Barse and Mundt, as limited partners of Pickwick Farm

LP, do not have responsibility for the management or operation of the entity's business.  *Id.* ¶ 17.

With respect to any sale of the Farm, such a transaction requires, *inter alia*, joint consent of

Pickwick Farm LP's two general partners.  *See* Agreement of Limited Partnership of Pickwick

Farm Limited Partnership dated November 17, 1992 ("LP Agreement," ECF 38-3), Art. VIII.A.

In May 2013, the Pickwick Farm LP "received an offer" of $2.7 million for the purchase

of the Farm.  ECF 2 ¶ 22.  Despite the desire of Bartlett, Barse, and Mundt to pursue the sale,

Pickford withheld her consent and effectively blocked the transaction.  *Id.* ¶ 39.

Because of Ms. Pickford's unwillingness to sell the Farm and the failure of Pickwick

Farm LP to operate with a profit, plaintiffs filed suit against defendant.  ECF 2.  The Complaint

contains four counts: Count I, "Specific Performance"; Count II, "Declaratory Judgment -

Injunctive Relief"/"Sale of the Farm"; Count III, "Declaratory Judgment - Injunctive

Relief"/"Removal of Cecile as a General Partner"; and Count IV, "Judicial Dissolution [of

Pickwick Farm LP]," as an "alternative to the relief sought in Counts I and II."  *Id.*

Currently before the Court is plaintiffs' pre-discovery Motion for Summary Judgment

(ECF 38).   In support of the Motion, plaintiffs submitted a Memorandum (ECF 38-1)

---

[4] As discussed, *infra*, there is some dispute as to the size of the Farm.  Ms. Pickford
describes the Farm as 76 acres in size.  Affidavit of Cecile E. Pickford ¶ 2 (ECF 40-1).  But, Ms.
Bartlett contends that, due to erosion, the Farm is only 74 acres.  Supplemental Affidavit of Ms.
Christy Bartlett ¶ 3 (ECF 41-1).  The discrepancy is not material here.

(collectively, "Motion"), and five exhibits.[5]  Defendant filed an opposition to the Motion (ECF 40, "Opposition") and appended the Affidavit of Ms. Pickford as well as a copy of the LP Agreement (ECF 40-1).  Plaintiffs Bartlett and Barse filed a Reply (ECF 41, "Reply"), along with a Supplemental Affidavit of Christy Pickford Bartlett ("Supp. Bartlett Aff.", ECF 41-1).

The Motion has been fully briefed and no hearing is necessary to resolve it.  *See* Local Rule 105.6.  For the reasons that follow, I will deny the Motion as premature.

## FACTUAL BACKGROUND

Thomas Pickford, II ("Mr. Pickford") had four children with Patricia Wyeth, his first wife: Bobbe, Christy, Patricia and Thomas Pickford, III.  Mr. Pickford had one child with Nancy Lidstone, his second wife: Nicole Pickford Purner.  Mr. Pickford also legally adopted two of Patricia Wyeth's daughters, Cecile and Gigi.  Mr. Pickford passed away on or about May 26, 2003.  ECF 2 ¶ 14.

In November or December 1992, Mr. Pickford formed Pickwick Farm LP "to hold a seventy-six acre farm."  *See* Affidavit of Cecile E. Pickford ¶ 2 ("Pickford Aff.", ECF 40-1); ECF 2 ¶ 11.  The Farm has about 1,500 feet of waterfront, but no buildings.  *See* Affidavit of Christy Pickford Bartlett ¶ 3 ("Bartlett Aff.", ECF 38-2),.  Pickwick Farm LP's purpose is the "managing, operating, developing, and otherwise dealing with the [Farm] for the production of profit" and "all activities incidental thereto."  LP Agreement Art. II. (ECF 38-3).  However, because the Farm is located in a Chesapeake Bay Critical Area, there are restrictions on its use.  Bartlett Aff.¶ 3 (ECF 38-2).

---

[5] The Motion was filed only by Bartlett and Barse.  *See* ECF 38.  But, Mundt submitted a response to the Motion (ECF 39), "adopt[ing] the reasoning contained" therein and "pray[ing] the Court to grant the relief therein requested in Plaintiff's Motion for Summary Judgment."  Therefore, I will consider the Motion as if it were filed by all of the plaintiffs.

Plaintiffs allege that Mr. Pickford sought to "ensure that his assets would be used equally for the care, support and maintenance of his seven children." ECF 2 ¶ 9. Ms. Bartlett adds in her Affidavit that her father created Pickwick Farm LP "to insure [his children's] financial stability and independence in [their] later years." Bartlett Aff. ¶ 2 (ECF 38-2). According to Ms. Pickford, however, her father conveyed the Farm to Pickwick Farm LP "to protect [the Farm] from a bankruptcy proceeding that his business partner in the Pickford-Joy Enterprises Limited Partnership became embroiled in." Pickford Aff. ¶ 2 (ECF 40-1).[6]

Seven individuals and/or entities hold an equal share in Pickwick Farm LP. They are plaintiffs Bartlett, Mundt, and Barse; defendant Pickford; Nicole Pickford Purner, who is not a party to this litigation but is a limited partner of Pickwick Farm LP; and two entities: the Stephen Pickford and April Pickford Trust, and the Patricia Pickford Revocable Trust. *See* Pickford Aff. ¶ 5 (ECF 40-1).[7] Pickwick Farm LP has two general partners—plaintiff Bartlett and defendant Pickford, who are daughters of Mr. Pickford. Each holds a 1% general partnership interest and a 13.2857 limited partnership interest. LP Agreement Art. IV. (ECF 38-3); Pickford Aff. ¶ 3 (ECF 40-1). Pickwick Farm LP's other five partners are limited partners, each holding a 14.2857 limited partnership interest. *Id.*

As to the management of business and operations of Pickwick Farm LP, the LP Agreement provides the following, LP Agreement Art. V. (ECF 38-3) (alteration in original):

---

[6] By written agreement, the partners of Pickford-Joy Enterprises Limited Partnership converted it to Pickford Enterprises, L.L.C. ("Pickford Enterprises"). Pickford Aff. ¶ 2 (ECF 40-1). The operation of Pickford Enterprises is the subject of related litigation in the Circuit Court for Talbot County involving some of the same parties in this case. *See infra*, note 11. Pickford Enterprises owns two commercial buildings located in Rockville, Maryland. Defendant Cecile E. Pickford is the General Manager of Pickford Enterprises. Pickford Aff. ¶ 2 (ECF 40-1).

[7] The Complaint indicates that Bartlett and Pickford are Co-Trustees of the Stephen Pickford and April Pickford Trust. ECF 2 ¶¶ 2, 5. Additionally, Bartlett is the Trustee of the Patricia Pickford Revocable Trust. *Id.* ¶ 2.

V.  <u>Authority of Partners; Management of Business</u>. The limited partners shall not exercise any rights in connection with the management or operation of the Partnership's business, including without limitation, the acquisition, ownership, divestment, and distribution policy of the Partnership.

Management of the business of the Partnership shall be in every respect the full and complete responsibility of the general partners alone.  All decisions made for and on behalf of the Partnership by the general partners shall be binding upon the Partnership.  All action of the general partners shall be with the approval of the two general partners.

With respect to any "deadlock or dispute between the general and/or limited partners on matters regarding the business or affairs of the Partnership," the LP Agreement provides, LP Agreement Art. XIV. (ECF 38-3):

> [T]he partners agree that it shall be a condition precedent to the taking of any further action (whether legal, equitable, or other) of the partners with respect to such matter that the partners use their good faith efforts to resolve such dispute or deadlock by consulting with all of the partners as well as with the professionals (lawyers or accountants) regularly advising the Partnership on the matter which is the subject of dispute or deadlock.

According to Ms. Pickford, "[u]ntil recently" she and Ms. Bartlett "have amicably run the Farm by contracting with a tenant farmer to farm the tillable land on the Farm while the land itself appreciates in value."  Pickford Aff. ¶ 4 (ECF 40-1).  Pursuant to this agreement, the tenant farmer pays an annual rent to Pickwick Farm LP, which was "sufficient to cover Pickwick Farm's expenses and resulted in a nominal annual profit."  *Id.*   Ms. Pickford asserts that this resulted in Pickwick Farm LP earning annual profits ranging from $259.00 to $314.00 per year from 2000 to 2007.  *Id.*   In 2007, Ms. Bartlett proposed and Ms. Pickford agreed to hire the tenant to remove the trash that had accumulated on the farm.  *Id.* ¶ 5.  Ms. Pickford contends that, as a result of this "at-will arrangement," Pickwick Farm LP recorded "slight annual losses starting in 2008, ranging from $524.00 to $757.00."  Thus, the Farm does not generate income

and "has not generated income from year to year for quite some time." Bartlett Aff. ¶ 3 (ECF 38-1).

Ms. Bartlett asserts: "The property has development potential, but is in need of some substantial improvements to secure its waterfront and to avoid further erosion and loss of land." *Id.* ¶ 5. According to Ms. Bartlett, in 1992 the farm originally "consisted of approximately 76 acres of land." Supplemental Affidavit of Ms. Christy Bartlett ¶ 3 (ECF 41-1). But, she contends "erosion has caused a loss of almost two acre, as the parcel is now only 74 acres, and is continually shrinking as a result of further erosion." *Id.*

With respect to any potential sale of the Farm, the LP Agreement, in pertinent part, states, LP Agreement Art. VIII.A. (ECF 38-3):

> [T]he general partners shall have the right and option to sell the real property of the Partnership and expend any such amounts for acquisition by the Partnership of new property or investments only upon the concurrence of all the general partners and the written consent of partners owing [sic] at least 75% of the partnership interests.

According to Ms. Pickford, in 2010 Ms. Bartlett received an offer to buy the Farm. Pickford Aff. ¶ 7 (ECF 40-1).[8] Ms. Bartlett informed Ms. Pickford that she wished to "move forward with a sale." According to Ms. Pickford, the offer was "unsolicited, the Farm had not been marketed, and Ms. Bartlett had not made a counter-offer." *Id.* She also notes that "real estate prices in the area were substantially depressed because of the deep economic recession that plagued the entire country." *Id.* Thus, Ms. Pickford elected to withhold consent to the "fire sale," because "the Farm *was a debt free asset*" and, in her view, they "should wait for property values to rise before moving forward with the sale." ECF 40 at 4 (emphasis in original).

---

[8] In her affidavit, Ms. Pickford does not specify the date or month of the offer or any further information as to the buyer.

In May 2013, a real estate broker, Cliff Meredith, approached Ms. Bartlett with a contract offer from an individual named Charles A. Robertson to purchase the Farm for $2,750,000. Bartlett Aff. ¶ 6 (ECF 38-2); *see also* unexecuted "Unimproved Land Contract of Sale" (ECF 38-4).  Mr. Robertson tendered an escrow check dated May 7, 2013, in the sum of $100,000 (ECF 38-4 at 19).    Ms. Bartlett considered the offer to be an "excellent" one, and from a person "prepared to invest the money necessary to stop the ongoing loss and diminution to the value of this property."  Bartlett Aff. ¶ 7 (ECF 38-2).  She asserts:  "Continuing to do nothing will result in devaluation of the land to the detriment of all partners of Pickwick."  *Id.*  Although the contract offer was "originally presented in May, 2013," Ms. Bartlett contends that "Mr. Roberston still has interest in making the purchase of the farm."  Bartlett Aff. ¶ 6 (ECF 38-2); Unimproved Land Contract of Sale at 1-9 (ECF 38-4).

According to Ms. Pickford, once again, the offer was "unsolicited, the Farm had not been marketed, Ms. Bartlett had not made a counter-offer, and real estate prices in the area were still depressed from the aftereffects of the recession."  Pickford Aff. ¶ 8 (ECF 40-1).  Thus, Ms. Pickford informed Ms. Bartlett that she did not consent to the sale because she "believe[s] the value of the Farm will rise in time along with prices for other real estate surrounding the Farm in Talbot County."  *Id.*

Upon the rejection of the second offer by Ms. Pickford,  Ms. Bartlett contends that "in accordance with the general partner deadlock provisions" of the LP Agreement, as one of the general partners, she called a partnership meeting by sending a  Notice of Partnership Meeting dated October 4, 2013 to all Pickwick Farm LP partners, including Ms. Pickford.  ECF 38-2 at 3; LP Agreement Art. XIV. (ECF 38-3).  The notice informed each of partner that a meeting of the Pickwick Farm LP partners would take place on October 17, 2013, at the offices of "local

counsel" Ewing, Dietz, Fountain and Kehoe, P.A. located in Easton, Maryland.  Bartlett Aff. ¶ 9

(ECF 38-2).[9]  The purpose of the meeting was to discuss the offer from Mr. Robertson.  *Id*.  The

Pickwick Farm LP partners "were invited to attend in person or via telephone."  *Id.*

Ms. Pickford claims she did not receive the Notice of Partnership Meeting until October

14, 2013.  Pickford Aff. ¶ 9 (ECF 40-1).  At that time, she was in California and "unable, and

unwilling, to rearrange [her] schedule to travel back to Maryland to attend a meeting unilaterally

set by [Christy]'s counsel on short notice."  *Id.* ¶ 9.  Ms. Pickford also knew that Ms. Purner, a

limited partner who is not a party to this action, would not attend the meeting. *Id*.  As indicated,

the LP Agreement requires "concurrence of all the general partners and the written consent of

partners owing [sic] at least 75% of the partnership interests."  LP Agreement Art. VIII.A. (ECF

38-3).  And, Ms. Pickford contends that, even if she were present and had acquiesced to the sale,

without Ms. Purner it would have been "impossible" for Ms. Bartlett to obtain the consent of

partners owning seventy-five percent" of Pickwick Farm LP, as required by the LP Agreement to

approve the sale.  ECF 40 at 5; *see* LP Agreement Art. XVIII.A. (ECF 38-3).

Plaintiffs contend that the meeting of October 14, 2013, complied with the requirements

of the LP Agreement's "deadlock" provision in Article XIV. of the LP Agreement (ECF 38-3).

*See* ECF 2 ¶ 26.  The meeting was attended by the following partners: Ms. Bartlett, on behalf of

herself as a general and limited partner, as a trustee for the Patricia Pickford Revocable Trust,

and as co-trustee for the Stephen Pickford and April Pickford Trust; Ms. Mundt, on behalf of

herself as a limited partner; and Ms. Barse, on behalf of herself as a limited partner, via

---

[9] In her Affidavit, Ms. Bartlett refers to Ewing, Dietz, Fountain & Kehoe, P.A. as "our local counsel", Bartlett Aff. ¶ 9 (ECF 38-2), but it is unclear from the Affidavit if the firm represented Pickwick Farm LP or plaintiffs in their individual capacities.  Notably, the Complaint was filed by Alexis E. Kramer of Ewing, Dietz, Fountain & Kehoe, P.A., who is listed  as "Attorney for Plaintiffs."  ECF 2 at 13.

telephone.  Bartlett Aff. ¶ 9 (ECF 38-2).  According to Ms. Bartlett, all partners in attendance, whether in person or by telephone, who together represented 57% of the partnership interest in Pickwick Farm LP, voted to sell the Farm.  ECF 2 ¶ 25.  However, without the votes of Ms. Pickford, as general partner, and Ms. Purner, as limited partner, the sale was blocked.  Bartlett Aff. ¶ 9 (ECF 38-2).

On November 18, 2013, Bartlett, Barse, and Mundt initiated this suit in the Circuit Court for Talbot County, Maryland against defendant Pickford, in her capacity as general partner of Pickwick Farm LP.[10]  As noted, defendant removed this case to federal court, on the basis of diversity.  ECF 1.  After some skirmishes as to Ms. Pickford's domicile for diversity purposes (*see* ECF 27),[11] the Court issued a Scheduling Order on March 28, 2014.  ECF 28.  By Order dated May 19, 2014 (ECF 30), however, the Court stayed the case upon request of the parties (ECF 29), to permit settlement discussions.  On June 26, 2014, in a Joint Motion to Modify the Schedule (ECF 36, "Joint Motion") the parties informed the Court that settlement efforts had been unsuccessful and stated: "The parties plan to now commence discovery."  ECF 36 at 1.  The

---

[10] On the same date, Bartlett, Barse and Thomas H. Pickford, III (who is not a party to this action) filed a separate case ("Pickford Litigation") in Talbot County against Pickford, Mundt, and Katherine Zouck (who is not a party to this action), regarding the operation of Pickford Enterprises.  ECF 40 at 2.  The Pickford Litigation is pending in Talbot County.  *Id.*

[11] In her Notice of Removal (ECF 1), Ms. Pickford alleged subject matter jurisdiction on the basis of diversity.  She claimed plaintiffs are citizens of Maryland, California, and Florida, and defendant is a citizen of the State of Washington.  ECF 1 ¶ 8.  However, plaintiffs disputed the citizenship of Ms. Pickford.  In particular, plaintiffs alleged that Ms. Pickford is domiciled in Maryland.  ECF 2 ¶ 5.

In an Order dated March 4, 2014 (ECF 27), I stated:  "In my view, defendant has met her burden to establish that she is domiciled in Washington," so as to create federal subject matter jurisdiction on the basis of diversity.  ECF 27 at 2.  However, I also noted that plaintiffs' counsel would be permitted to explore further the issue of Ms. Pickford's citizenship during the course of discovery.  *Id.*  In the Motion, plaintiffs do not raise the issue of jurisdiction or Ms. Pickford's citizenship.

parties also requested modification of the Scheduling Order, to include, among other things,

discovery through January 15, 2015. *Id.* at 2.  By Order dated June 27, 2014 (ECF 37), I granted

the request.  Forty-nine days later, plaintiffs filed the Motion now pending before this Court.

## DISCUSSION

The Farm, consisting of more than 70 acres in Easton, Maryland, is the sole asset of

Pickwick Farm LP.  Bartlett Aff. ¶ 3 (ECF 38-2).  According to plaintiffs, the two general

partners are at a "stalemate" as to whether to sell the Farm.  ECF 38-1 at 2.  Moreover, plaintiffs

assert that some of the partners "are in dire need" of money, yet defendant refuses to sell, even

though the Farm generates expenses, such as real estate taxes, but no revenue.  *Id.*  Because of the

stalemate between the general partners in connection with the sale of the Farm, plaintiffs filed

suit, seeking, *inter alia*, dissolution of the partnership, distribution of assets, and removal of Ms.

Pickford as general partner.  ECF 2 ¶¶ 27-44.

Plaintiffs rely, *inter alia*, on Section 10-802 of the Corporations and Associations Article

("Corps.") of the Md. Code (2007 Replacement Volume and 2013 Supplement).[12]  It states that a

limited partnership may be judicially dissolved "[o]n application by or for a partner," if "it is not

reasonably practicable to carry on the business in conformity with the partnership agreement."  In

plaintiffs' view, dissolution is appropriate because of the deadlock as to whether to sell the Farm.

ECF 38-1 at 11.  Similarly, they argue, *id.* at 12, that removal of Ms. Pickford as a partner is an

appropriate remedy under Corps. § 9A-601(5), which states, *inter alia*, that "expulsion" of a

partner by judicial determination may be appropriate "[o]n application by the partnership or

another partner," if the partner to be expelled "engaged in conduct relating to the partnership

---

[12] In this diversity case, it appears that Maryland law governs, although the parties have
not addressed this issue.

business which makes it not reasonably practicable to carry on the business in partnership with the partner."

In her Opposition (ECF 40), Ms. Pickford contends, among other things, that summary judgment is inappropriate, because she has not had an opportunity to complete discovery. ECF 40 at 5-6, 16. According to Ms. Pickford, when plaintiffs filed the Motion, "the parties served, but had not yet responded to, written discovery and the parties had not yet taken any depositions." *Id.* at 6. Therefore, she maintains that the record is incomplete, and insists that a "full record" must be developed. ECF 40 at 16.

Based on the record before the Court, it does not seem that the Court can yet make a determination as to whether dissolution of the partnership or expulsion of Ms. Pickford is appropriate. In particular, it remains unclear if it is no longer "reasonably practicable to carry on the business in conformity with the partnership agreement" as required by Corps. § 10-802. The LP Agreement describes the purpose of the partnership as "managing, operating, developing, and otherwise dealing with the [Farm] for the production of profit." LP Agreement Art. II. (ECF 38-3). And, according to Ms. Pickford, the parties "vigorously dispute[ ]" whether the Farm is able to produce a profit. Opposition at 7 (ECF 40).

Summary judgment is ordinarily inappropriate "where the parties have not had an opportunity for reasonable discovery." *E. I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). The Fourth Circuit has explained that "[s]ummary judgment before discovery forces the non-moving party into a fencing match without a sword or mask." *McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 483 (4th Cir. 2014). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the

11

motion on the grounds that more time was needed for discovery.' " *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)).

To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without needed discovery.   Fed. R. Civ. P. 56(d); *see Harrods,* 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).   And, "[i]n response, the district court may defer consideration of the summary judgment motion, deny the motion, or 'issue any other appropriate order.' " *Id. McCray*, 741 F.3d at 483 (quoting Fed. R. Civ. P. 56(d)).

Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.' " *Hamilton v. Mayor & City Council of Baltimore,* 807 F.Supp.2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS,* No. D KC–08–2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011), *aff'd.*, 707 F.3d 437 (4th Cir. 2013), *cert. granted,* ____ U.S. ____, 134 S.Ct. 2898 (2014)).   Indeed, a non-moving party's Rule 56 request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.,* 55 F.3d 943, 954 (4th Cir. 1995).

Defendant never filed an affidavit under Rule 56, explaining the need to conduct discovery.   Nevertheless, defendant contends in her Opposition that summary judgment at this juncture is inappropriate because, among other things, discovery "has just commenced and is not set to close until January 15, 2015."   ECF 40 at 6.   Defendant explains:   "At the time Plaintiff

filed the motion, the parties served, but had not yet responded to, written discovery and the parties

had not yet taken any depositions." *Id*.

The Fourth Circuit has placed "great weight" on the Rule 56(d) affidavit and has said that

a mere " 'reference to Rule 56(f) [now Rule 56(d)] and the need for additional discovery in a

memorandum of law in opposition to a motion for summary judgment is not an adequate

substitute for [an] affidavit.'" *Harrods,* 302 F.3d at 244 (quoting *Evans,* 80 F.3d at 961)

(quotation omitted). But, the Court has "not always insisted on a Rule 56(d) affidavit." *Harrods,*

302 F.3d at 244 (citations omitted).

Failure to file an affidavit may be excused "if the nonmoving party has adequately

informed the district court that the motion is premature and that more discovery is necessary" and

the "nonmoving party's objections before the district court 'served as the functional equivalent of

an affidavit.' " *Id.* at 244-45 (internal citations omitted). Simply stated, the non-moving party's

failure to file a Rule 56(d) affidavit does not obligate a district court to issue a summary judgment

ruling that is premature. Indeed, if the nonmoving party makes objections that satisfy the purpose

of an affidavit and is not "lax in pursuing discovery," she may not need to file a Rule 56(f)

affidavit. *Id.* at 245.

This position is supported by Charles Alan Wright and Arthur R. Miller in FEDERAL

PRACTICE & PROCEDURE (3rd ed. 2008). At 10 B Federal Practice & Procedure § 2740, the

authors state:

> The purpose of subdivision (f) [of Rule 56] is to provide an additional
> safeguard against an improvident or premature grant of summary judgment and
> the rule generally has been applied to achieve that objective. Consistent with this
> purpose, courts have stated that technical rulings have no place under the
> subdivision and that it should be applied with a spirit of liberality.[ ] Thus, in
> certain circumstances courts have indicated that continuances would be proper
> even though Rule 56(f) had not been formally complied with when the court

13

concluded that the party opposing summary judgment had been diligent and had acted in good faith.

To illustrate, in *Chernova v. Electronic Systems Services, Inc.,* 247 F. Supp.2d 720, 722-23 (D. Md. 2003), a plaintiff requested discovery after a defendant employer filed a pre-discovery motion to dismiss or, in the alternative, for summary judgment.  Judge Motz granted plaintiff's request for discovery, reasoning that plaintiff's request was seemingly made in "good faith" and she had not been "lax in discovery because she ha[d] not yet had an opportunity to conduct any discovery." *Id.* at 723.

In this case, notwithstanding defendant's failure to file a Rule 56(d) affidavit, I am satisfied that it is premature to rule on plaintiffs' summary judgment motion.  In the first place, on June 26, 2014, the parties informed the Court in their Joint Motion that they "plan to now commence discovery." ECF 36 at 1.  They also requested revision of the Scheduling Order, to include, among other things, a discovery period through January 15, 2015.  *Id*.  By Order dated June 27, 2014 (ECF 37), I granted that request.  According to defendant, "At the time Plaintiff filed the motion, the parties served, but had not yet responded to, written discovery and the parties had not yet taken depositions." ECF 40 at 6.

Moreover, defendant contends that several material facts remain in dispute, such as whether the Farm is a wasting asset or, instead, can produce a profit.  *Id.* at 7.  A more developed record on these issues seems necessary prior to any determination as to whether it is "reasonably practicable to carry on the business in conformity with the partnership agreement," under Corps. § 10-802.

It is also noteworthy that both sides have submitted affidavits that conflict.  It is not the function of the factfinder to resolve matters pertaining to witness credibility.  *See, e.g., Boone v. Stallings,* 583 Fed. App.'x. 174, 175-76 (4th Cir. 2014) (per curiam).  *See also Black & Decker*

*Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644-45 (4th Cir. 2002).

## CONCLUSION

I am satisfied that it is appropriate to allow the parties to develop a full record.  Therefore, I will deny plaintiffs' Motion (ECF 38), without prejudice to plaintiffs' right to renew it at the close of discovery.

A separate Order follows, consistent with this Memorandum.


Dated:   December 31, 2014                                        /s/
                                                         Ellen Lipton Hollander
                                                         United States District Judge

15